**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

KEVIN M. CURLEY,

       Plaintiff,

v.

MERCURY INSURANCE SERVICES, LLC,
NICOLE HANER, SUZANNE CHAPMAN,
PETE GALASSI, RANDY PETRO, STEVE
HORTON, ABC CORPS 1-25, JOHN AND
JANE DOES 1-25,

       Defendants.

Civil Action No. 21-12259 (FLW)

**OPINION**

**WOLFSON, Chief Judge:**

Presently before the Court is Plaintiff Kevin M. Curley's ("Plaintiff") motion to remand this matter to state court. Plaintiff argues, first, that the removal violated the forum defendant rule, since Defendants Nicole Haner ("Haner") and Suzanne Chapman ("Chapman") (collectively with Mercury Insurance Services, LLC, Pete Galassi, Randy Petro, and Steve Horton, "Defendants") are citizens of New Jersey, and second, that the removal was improper because not all served Defendants effectively consented to the removal. Plaintiff's motion also requests attorney's fees. Defendants oppose the motion, and maintain that, although Haner and Chapman are New Jersey residents, the forum defendant rule does not apply because Plaintiff failed to allege any colorable legal claims against Haner and Chapman, and as such, Haner and Chapman were fraudulently joined to defeat diversity jurisdiction.

For the following reasons, I find that Haner was not fraudulently joined,[1] and therefore, removal was improper under the forum defendant rule, and thus, I need not reach the issue of consent.  Consequently, Plaintiff's motion to remand is **GRANTED**, and the case is remanded to the Superior Court of New Jersey, Law Division, Somerset County.

## I.    BACKGROUND AND PROCEDURAL HISTORY

The relevant facts are derived from Plaintiff's Second Amended Complaint ("Complaint").  ECF No. 1-3.  Plaintiff, a Pennsylvania citizen, is the former Manager of the Special Investigative Unit ("SIU") at Mercury Insurance Services, LLC's ("Mercury") Bridgewater, New Jersey, office ("Bridgewater Office").  Compl. ¶ 1; ECF No. 11-1, Lopez Decl. ¶ 2; ECF No. 1-5, Lindberg Decl. ¶ 2.  Mercury is a corporate entity organized under the laws of California.  Compl. ¶ 2.  Defendant Haner, a New Jersey citizen, was at all relevant times the Division Manager at Mercury's Bridgewater Office, and as such, was responsible for the overall operational supervision of the Bridgewater Office.  *Id.* ¶ 3; Lindberg Decl. ¶ 4.  However, because the SIU was required, by statute, to be independent of other operations at Mercury, Plaintiff alleges that Haner's supervisory responsibility over Plaintiff was limited and circumspect, and Haner did not have direct supervisory responsibility over Plaintiff or the SIU.  *Id.*  Defendant Chapman, also a New Jersey citizen, was at all relevant times the Branch Manager for Claims in Mercury's Bridgewater Office; she supervised operations of the Bridgewater Office's claims department.  *Id.* ¶ 4; Lindberg Decl. ¶ 4.

As SIU Manager, Plaintiff was charged with ensuring that Mercury complied with insurance fraud-related statutory obligations of New Jersey and New York.  *Id.* ¶ 1.  Notably,

---

[1] Because I find that Plaintiff has alleged a colorable CEPA claim against Haner, I need not consider whether Plaintiff alleges a colorable CEPA claim against Chapman, or whether Plaintiff alleged colorable common-law wrongful termination claims against Haner or Chapman.

according to Plaintiff, both states required the SIU to be independent from an insurance company's claims division. *Id*. ¶¶ 19-30.  Mercury's internal manual stated that the "primary role of the SIU is to conduct investigations of claims referred by claims personnel, . . . [which] upon further SIU investigation, may lead to" a conclusion that state insurance fraud laws were violated. *Id*. ¶ 35. Further, Plaintiff alleges that a significant part of his duties involved monitoring and coordinating corporate-level compliance with New Jersey and New York insurance regulators regarding referrals of suspected fraudulent claims. *Id*. ¶ 16.  To carry out this role, Plaintiff, on behalf of Mercury, was required to disclose Mercury's efforts to challenge and combat fraudulent claims by providing summaries of these efforts to the insurance regulators, including through filing of annual fraud reports and fraud plans to detect, investigate, and prevent fraudulent insurance activities. *Id*.

Plaintiff alleges that, in order to cut company expenses, Defendants actively and deliberately suppressed the functions of the SIU Department by blocking the Department from engaging in investigation of potentially fraudulent claims, and deliberately attempting to make the SIU Department subservient to the Claims Department. *Id*. ¶¶ 32, 34, 36.  According to Plaintiff, Haner was primarily responsible for creating, implementing, and maintaining an allegedly illegal scheme by which the Claims Department would purposely curtail referrals to the SIU in order to reduce SIU investigations and fraud prosecutions, thereby reducing internal company expenses and legal bills. *Id*. ¶¶ 42-47.  Haner's scheme also included, among other things, blocking SIU investigators from rendering their investigation conclusions, and explicitly instructing the SIU investigators to hide their notes and conclusions in obscure computer network folders to thwart potential discovery of those notes. *Id*. ¶¶ 37, 64.  To ensure implementation of this plan, Plaintiff alleges that Haner informed him in February 2019, that there would be no legal actions to avoid claims due to fraud, nor would there be SIU investigations, except upon Haner's unilateral and

express review and approval. *Id*. ¶ 43. On April 1, 2019, Plaintiff informed his immediate supervisor, Defendant Galassi, that the SIU was experiencing a significant drop in fraud referrals, and that Chapman had instituted new protocols by which all suspected fraud activity would not be immediately referred to the SIU for investigation, but rather, would first be sent to Haner and Chapman to determine whether a referral would ultimately be made to the SIU. *Id*. ¶¶ 49-50, 99-100. According to Plaintiff, Galassi took no action. *Id*. ¶¶ 51-52. Plaintiff alleges that on April 16, 2019, Haner sent an email announcing that the investigatory functions of the SIU, including examination under oath of persons suspected of fraud, would now be handled by in-house counsel in the Claims Department, further circumventing the SIU's processes. *Id*. ¶ 61. Later that month, Haner allegedly sent Plaintiff an email admonishing Plaintiff for putting SIU notes and conclusions in a computer system location that would be discoverable if a case was ultimately litigated, and expressly suggested that these notes should be hidden in order to avoid production if subpoenaed. *Id*. ¶ 64. At a meeting in June 2019 between Plaintiff and Haner, Plaintiff avers that because he "failed to express exuberance" about the success of cutting expenses by not referring fraud claims to SIU, Haner allegedly chastised Plaintiff by stating that all Departments were "rowing in the same direction" to cut expenses except Plaintiff and the SIU. *Id*. ¶ 73. Haner then allegedly admitted to Plaintiff that the current referral protocols would be implemented until more insurance policies were sold, and Mercury would reconsider returning to the statutorily-mandated protocols. *Id*. According to Plaintiff, after Plaintiff informed Galassi, as well as Mercury's National Legal Director, of this meeting, both Gallassi and the Legal Director visited the Bridgewater Office a few days later to meet with Haner. *Id*. ¶¶ 74-76. Following the meeting, Galassi allegedly told Plaintiff no action would be taken and that Plaintiff had "overreacted," and he needed to "go with the flow" regarding the objective to cut expenses. *Id*. ¶ 76.

In February 2020, Plaintiff alleges that another SIU investigator sent an email, with Plaintiff copied, to George Joseph ("Joseph"), Chairman of the Board at Mercury, among others, providing extensive details of Haner's scheme to cut costs by thwarting fraud enforcement. *Id*. ¶ 104. A few days later, Joseph allegedly called Plaintiff directly and noted that he was upset with the scheme, and that if Haner or others were behind the scheme, they would be held accountable. *Id*. ¶ 106. Further, that same day, a representative from Mercury human resources purportedly emailed Plaintiff and stated that the email to Joseph prompted Mercury's Internal Audit ("IA") team to open an investigation. *Id*. ¶ 107. Plaintiff cooperated with the IA investigation by providing emails and information explaining the drop in referrals, investigations, and overall effectiveness of the SIU, some of which allegedly implicated Haner. *Id*. ¶ 110-11, 119. On February 27, 2020, Plaintiff avers that he met with Haner and Chapman, at which time Haner expressed that it was "inappropriate" that Joseph had been sent an email regarding the scheme. *Id*. ¶ 114.

In early March 2020, Plaintiff's supervisor, Galassi, allegedly asked Plaintiff to begin preparing the statutorily-required New Jersey and New York fraud plan reports. *Id*. ¶ 121. On March 10, 2020, Plaintiff expressed to the IA investigative team that he felt uncomfortable with submitting the fraud reports, because he believed the New York Department of Insurance would ask questions if the true information was submitted. *Id*. ¶ 123. In that connection, two days later, Plaintiff sent an email to Galassi reiterating that any report would contain skewed information due to the alleged scheme, and that on the advice of personal counsel, he would not submit the report under his attestation and signature. *Id*. ¶ 124. Plaintiff forwarded this email to the IA team, and, over the following weeks, continued to communicate with the IA team to explain how the referral scheme operated and why the SIU numbers were skewed. *Id*. ¶ 125-126. Plaintiff alleges that on

April 16, 2020, the IA emailed Plaintiff and informed him that the audit had been completed, and that an investigation report had been issued to the appropriate recipients, which did not include Plaintiff. *Id*. ¶ 129.

On April 27, 2020, ten days after the release of the IA report, Plaintiff alleges that he received a meeting request from a Mercury human resources employee. *Id*. ¶ 133.  At the meeting, the employee accused Plaintiff of improperly accessing other employees' emails, which constituted a breach of company policy. *Id*. ¶ 134.  As such, the HR employee suspended Plaintiff with pay pending further investigation. *Id*.  On May 8, 2020, Plaintiff received a letter from Mercury informing him that his employment was terminated. *Id*. ¶ 139.  According to Plaintiff, upon information and belief, Defendants Haner, Chapman, and Galassi, among others, were criticized in the IA report for their role in the scheme. *Id*. ¶ 131.  Plaintiff alleges that because the IA revealed a conspiracy of wrongdoing by Defendants, these parties subsequently retaliated against Plaintiff for reporting the scheme. *Id*. ¶ 132.

Plaintiff initially filed the Complaint in New Jersey Superior Court on May 7, 2021, asserting claims pursuant to New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1, *et seq.*, and common-law wrongful termination against all Defendants.  ECF No. 9-2, Counsel Cert. ¶ 2.  Particular to the CEPA claim, Plaintiff alleges that Defendants Haner and Chapman are individually liable for aiding and abetting the illegal termination of Plaintiff's employment.  Compl. ¶ 148.  Plaintiff amended the Complaint on May 8, 2021.  Counsel Cert. ¶ 3.  On May 10, 2021, Haner and Chapman were personally served with the Amended Complaint and Summons.  Counsel Cert., Exs. D, E; Not. of Removal ¶ 12.  Plaintiff amended the Complaint a second time on May 17, 2021.  Counsel Cert. ¶ 4.  Defendants removed the matter to this Court on June 8, 2021.  ECF No. 1.  Plaintiff's remand motion followed.  ECF No. 9.

## II.   LEGAL STANDARD

### A.  Removal

"A defendant may remove a civil action filed to federal court if the federal court would have original jurisdiction to hear the matter in the first instance." *Farparan v. Autozoners, LLC*, No. 19-21464, 2020 WL 4596927, at *2 (D.N.J. Aug. 11, 2020) (quoting 28 U.S.C. § 1441(a)). Where, as here, "federal jurisdiction is premised only on diversity of the parties, the forum defendant rule applies." *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152 (3d Cir. 2018).  This rule provides that a "civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." *Id*. (quoting 28 U.S.C. § 1441(b)(2)).  If an action has already been removed to federal court, "a district court may remand the matter to state court if the removal was procedurally defective or if subject matter jurisdiction was lacking." *Farparan*, 2020 WL 4596927, at *2 (quoting 28 U.S.C. § 1447(c)).

Notably, the party "who urges jurisdiction on a federal court bears the burden of proving that jurisdiction exists[.]" *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). Further, "removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." *In re Briscoe*, 448 F.3d 201, 217 (3d Cir. 2006).

### B.  Fraudulent Joinder

"Where removal is premised on diversity jurisdiction," as it is here, the removing party "may only avoid remand by demonstrating that the defendant sued in his [or her] home state was fraudulently joined." *Ware v. CIBA Specialty Chems. Corp.*, No. 04-1645, 2004 WL 1743938, at *2 (D.N.J. Aug. 4, 2004) (citation omitted).  Joinder is considered fraudulent "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or

no real intention in good faith to prosecute the action against the defendants or seek a joint judgment." *Id*. (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992)).  In that connection, "if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Batoff*, 977 F.2d at 851 (quoting *Boyer*, 913 F.2d at 111).

Therefore, when assessing fraudulent joinder, "it is not a district court's role . . . to scrutinize the merits of a claim," or even to determine "whether plaintiff's claims are 'plausible' under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), or Rule 12(b)(6)[.]"  *McBurnie v. CRC Ins. Servs., Inc.*, No. 19-20018, 2020 WL 1329917, at *4 (D.N.J. Mar. 23, 2020); *Abbedutto v. Johnson & Johnson*, No. 17-5724, 2019 WL 3245105, at *2 (D.N.J. July 19, 2019) (citing *In re Briscoe*, 448 F.3d at 218; *Batoff*, 977 F.2d at 852); *see In re Briscoe*, 448 F.3d at 219 (noting that an inquiry into the legal merits of a claim in a fraudulent joinder determination would be "inappropriate." (citation omitted)); *McBurnie*, 2020 WL 1329917, at *4 ("Plaintiff is not required to prove his case against [the joined defendant] in order to overcome the 'fraudulent joinder' accusation." (citation omitted)).  Rather, the district court's inquiry merely "focuses on whether [Plaintiff's claims] are more than 'frivolous.'" *Abbedutto*, 2019 WL 3245105, at *2 (citations omitted); *see Annen v. Morgan Technical Ceramics*, No. 18-11197, 2019 WL 325542, at *5 (D.N.J. Jan. 24, 2019) ("The fraudulent joinder analysis looks for a 'colorable' claim and does not go so far as to determine whether the complaint states a claim under a motion to dismiss standard." (citation omitted)); *see also Batoff*, 977 F.2d at 852 ("it is possible that [a] party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted.").  In fact, when courts in this district have found fraudulent joinder, "they have nearly

always done so" because the claim was based on a "legal impossibility," such as statute of limitations, the absolute litigation privilege, or ripeness. *McBurnie*, 2020 WL 1329917, at *4 (citing *In re Briscoe*, 448 F.3d at 223 (statute of limitations); *Roggio v. McElroy*, No. 10-777, 2010 WL 1492594, at *4 (D.N.J. Apr. 14, 2010) (absolute litigation privilege); *Blackman & Co., Inc. v. GE Bus. Fin. Servs., Inc.*, No. 15-7274, 2016 WL 1702043, at *5 (D.N.J. Apr. 28, 2016) (ripeness)).

Importantly, "the removing party carries a heavy burden of persuasion" in proving fraudulent joinder. *In re Briscoe*, 448 F.3d at 217. Furthermore, when determining whether a defendant has been fraudulently joined, the court must consider "the plaintiff's complaint at the time the petition for removal was filed" and "must assume as true all factual allegations of the complaint." *Id.* (quoting *Batoff*, 977 F.2d at 851-52). Additionally, the district court "must resolve all contested issues of substantive fact in favor of the plaintiff and must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." *Farparan*, 2020 WL 4596927, at *2 (quoting *Boyer*, 913 F.2d at 111).

## III.    DISCUSSION

Plaintiff argues that, because Defendants Haner and Chapman are New Jersey residents, this matter was improperly removed from the state court on the basis of diversity jurisdiction as their citizenship violates the forum defendant rule. Defendant concedes that Haner and Chapman are New Jersey residents, but contends that Plaintiff has failed to assert colorable claims against these Defendants, and as such, they were fraudulently joined,[2] and this Court may retain

---

[2] Based on the Court's research, courts are split on whether fraudulent joinder provides an exception to the forum defendant rule. *See, e.g.*, *Morris v. Nuzzo*, 718 F.3d 660, 670-71 (7th Cir. 2013) (analyzing question of whether fraudulent joinder doctrine extends to diverse resident defendants and finding it to be "very close question," but refraining from ruling because diverse resident at issue was not fraudulently joined); *McWilliams v. Stryker Corp.*, No. 09-3992, 2010

jurisdiction over the matter.  Specifically, as it relates to Plaintiff's CEPA claim, Defendants maintain that Plaintiff's allegations against Haner and Chapman relate solely to their role in reducing referrals to the SIU to cut expenses, and as such, Plaintiff "has not alleged and cannot allege that Haner and/or Chapman took any adverse employment action against him because of any protected activity by him, as he must do to state a claim against them under CEPA."  Def. Opp. Br. at 5.  I disagree with Defendants, and find that Plaintiff has alleged at least a colorable claim against Defendant Haner.

Under CEPA, an "employer shall not take any retaliatory action against an employee because the employee . . . [o]bjects to, or refuses to participate in any activity, policy or practice which an employee reasonably believes . . . is in violation of a law, or a rule or regulation promulgated pursuant to law . . . [or] is fraudulent or criminal[.]" N.J.S.A. 34:19-3(c).  The statute defines "retaliatory action" as the "discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. 34:19-2(e).  And, the statute defines "employer" as any "individual, . . . corporation or any person or group of persons acting directly or indirectly on behalf of or in the interest of an employer with the employer's consent[.]" N.J.S.A. 34:19-2(a); *Palladino ex rel. U.S. v. VNA of Southern New Jersey, Inc.*, 68 F. Supp. 2d 455, 471-72 (D.N.J. 1999) (noting that New Jersey Supreme Court determined that "with the employer's consent" reflects normal agency respondeat superior principles such that both employers and employers' agents could be held liable for retaliation (citing *Abbamont v. Piscataway Tp. Bd. of Educ.*, 138 N.J. 405 (1994))).  Therefore,

---

WL 2516589, at *1 (D.N.J. June 11, 2010) (noting that fraudulent joinder doctrine applies when plaintiff files case in state court against diverse resident defendant); *Yount v. Shashek*, 472 F. Supp. 2d 1055 (S.D. Ill. 2006) (finding fraudulent joinder doctrine does not apply to diverse resident defendant).  However, I need not reach this issue in light of the result *infra*.

CEPA liability not only attaches to corporations, but "may attach to individuals who perform retaliatory acts" within the scope of his or her employment as well.  *Southward v. Elizabeth Bd. of Educ.*, No. 15-3699, 2017 WL 111924, at *10 (D.N.J. Jan. 11, 2017); *Palladino*, 68 F. Supp. 2d at 476 ("[CEPA] creates individual liability for agents of the employer, including supervisory employees[.]"); *see Espinosa v. Cont'l Airlines*, 80 F. Supp. 2d 297, 306 (D.N.J. 2000) ("This Court . . . finds that individual defendants, including supervisors, can be held individually liable under CEPA.  Because here the individual Defendant supervisors may be sued under CEPA and those Defendants are non-diverse, this Court does not have diversity jurisdiction over this action.").  Importantly, relevant here, individual liability is not reserved solely for those who were direct supervisors or directly took the retaliatory action; CEPA liability can also be imposed on individuals, such as indirect supervisors and co-workers who allegedly participated in the retaliatory scheme. *Bowen v. Parking Auth. of City of Camden*, No. 00-5765, 2003 WL 22145814, at *22-23 (D.N.J. Sept. 18, 2003) (denying defendants' motion for summary judgment and finding that defendant co-worker who was, at times, supervised by plaintiff, could be held individually liable under CEPA if plaintiff could later prove a causal relationship between that defendant and the adverse employment action); *see Dewelt v. Measurement Specialties, Inc.*, No. 02-3431, 2007 WL 542234, at *7 (D.N.J. Feb. 16, 2007) (denying defendants' motion for summary judgment and determining that employees and members of the Board of Directors, who supervised the plaintiff, as well as non-employee, outside Directors, could be held individually liable under CEPA). However, individual liability requires personal involvement of each individual defendant, and thus CEPA "will not impose liability on any employee . . . *unless* the plaintiff [alleges] that the [individual] defendant took [some] adverse action against him because of his whistleblowing." *Bowen*, 2003 WL 22145814, at *23.

The Court must bear in mind that while individual liability requires specific facts pertaining to each individual defendant, in CEPA cases, courts have recognized that, prior to discovery, "a plaintiff cannot be expected to be privy to the inner workings" of the retaliatory actions and decisions individuals made against them, and thus, have allowed plaintiffs to proceed beyond the motion to dismiss stage to discover additional information on the alleged retaliation. *Southward*, 2017 WL 111924, at *10-*11 (denying motion to dismiss CEPA claim, but noting that once "discovery has been had, [plaintiff] will be held to the requirement of demonstrating the kind of personal involvement that would render *each* individual defendant liable."); *Tonkinson v. Byrd*, No. 17-06162, 2018 WL 1919829, at *4 (D.N.J. April 24, 2018) ("Even though Plaintiff will ultimately have the burden of establishing the specific actions of each Defendant in order to impose liability on them, at this point the Court cannot fault Plaintiff for not pleading more specifically who made the decision . . . to terminate Plaintiff, . . . because most of that information is within Defendants' knowledge.").

Here, I find that Plaintiff alleges a colorable CEPA claim against Defendant Haner, because the allegations against her are "more than 'frivolous'" and there is at least a "possibility that a state court would find that the complaint states a cause of action" against her. *Batoff*, 977 F.2d at 851; *Abbedutto*, 2019 WL 3245105, at *2 (citations omitted).  Defendant Haner, an employee of Mercury, was Division Manager at Mercury's Bridgewater Office, and although Haner was not Plaintiff's direct supervisor, Haner was responsible for the overall operational supervision of the office where both Plaintiff and Haner worked.  Compl. ¶ 4; Lindberg Decl. ¶ 4.  Plaintiff alleges that Haner was primarily responsible for creating, implementing, and maintaining the allegedly illegal scheme at issue.  Compl. ¶¶ 42-47, 61, 64.  During the relevant period, Plaintiff confronted Haner on numerous occasions about the alleged wrongdoing, and reported Haner's activities in

great detail to his immediate supervisor, the Chairman of the Mercury Board, and the Mercury audit team that ultimately investigated Haner's scheme. *Id*. ¶¶ 49-50, 73, 74-76, 99-100, 104, 106, 107, 110-111, 114, 119. After the audit team completed its review of the scheme, Plaintiff alleges, upon information and belief, that Haner, among others, was admonished for her role in the scheme. *Id*. ¶ 131. Plaintiff further alleges that because the audit team purportedly revealed a conspiracy of wrongdoing by the individual defendants, Haner and others subsequently participated in a retaliatory action against Plaintiff for reporting the scheme, resulting in Plaintiff's termination. *Id*. ¶ 132.

Defendants insist that these allegations do not "state a claim" for individual liability against Haner because the allegations do not sufficiently allege that Haner committed a retaliatory action against Plaintiff. Def. Opp. Br. at 3-9. Specifically, Defendants assert, first, that because the firing was supposedly related to an issue with how Plaintiff handled confidential Mercury documents, and not related to any action by Haner, Haner did not take any retaliatory action against Plaintiff. *Id*. Second, Defendants argue that because Haner was not Plaintiff's direct supervisor, and therefore, could not have directly fired Plaintiff, Haner could not have taken the alleged retaliatory action. *Id*.

As an initial matter, Plaintiff disagrees that his handling of confidential documents was the reason for his firing, and instead, alleges that this was merely a pretextual basis for the dismissal. Pl. Reply Br. at 15. As noted *supra*, in fraudulent joinder cases, a "district court must resolve all contested issues of substantive fact in favor of the plaintiff[.]" *Boyer*, 913 F.2d at 111. As such, the Court assumes the truth of Plaintiff's version of events. In any event, Defendants' factual dispute as to why Plaintiff was terminated cannot be resolved on a motion to dismiss, let alone a fraudulent joinder analysis.

Regarding whether Haner directly retaliated against Plaintiff, in light of Plaintiff's allegations and the fraudulent joinder standard, it is not wholly implausible that Haner retaliated against Plaintiff for his whistleblowing activities against her.  As alleged, Plaintiff acted in a manner directly adversarial to Haner for over a year, confronting her personally and reporting her activities to the highest levels of Mercury's management hierarchy, ultimately resulting in her alleged admonishment by the Mercury audit team.  In addition, Haner was in a position of authority over Plaintiff.  A supervisor is "any individual with an employer's organization who has the authority to direct and control the work performance of the affected employee[.]"  N.J.S.A. 34:19-2(d).  Although an organizational chart would not place Haner as Plaintiff's direct supervisor, Plaintiff alleges that Haner was nevertheless charged with the overall operational supervision of the Bridgewater Office where Plaintiff worked.  Plaintiff also alleged that Haner exercised control over the SIU by fundamentally changing the manner in which the unit referred cases, conducted investigations, and stored investigatory information, which directly affected the performance of Plaintiff's job.  Thus, based on Plaintiff's allegations, Haner had superior authority at Mercury over Plaintiff, such that it would not be a "legal [or factual] impossibility" that Haner could have had a role in the decision to terminate Plaintiff.  *McBurnie*, 2020 WL 1329917, at *4.  In any event, CEPA defines "retaliatory action" as not only firings, suspensions, or demotions of an employee, but also, "other adverse employment action taken against an employee in the terms and conditions of employment."  N.J.S.A. 34:19-2(e).  In light of the alleged adversarial nature of Plaintiff's relationship with Haner, it is also not a "legal impossibility" that Haner committed some "adverse employment action" against Plaintiff that contributed to his firing.  *McBurnie*, 2020 WL 1329917, at *4.  While this is, obviously, non-specific, this Court is not permitted to conduct a searching inquiry of the merits, or even find whether Plaintiff's CEPA allegations state a claim.  Rather, I

merely determine, on this motion, whether there is at least a "colorable" claim against Haner such that "there is even a possibility" that a state court would find that Plaintiff stated a CEPA claim. *Batoff*, 977 F.2d at 851.  Further, as explained *supra*, courts in this district have indicated that, in CEPA cases at the pre-discovery stage, "a plaintiff cannot be expected to be privy to the inner workings" of the retaliatory actions individuals made against them.  *Southward*, 2017 WL 111924, at *10; *see Tonkinson*, 2018 WL 1919829, at *4.  Given Plaintiff's allegations, the fraudulent joinder standard, and the current pre-discovery posture of this matter, I find that Defendant Haner was not fraudulently joined.  Because Haner is a New Jersey resident, who was properly served, and that was not fraudulently joined, pursuant to 28 U.S.C § 1441(b)(2), the forum defendant rule forecloses removal.[3]  For this reason, the matter is remanded.

## IV.   CONCLUSION

Because Plaintiff has alleged a colorable CEPA claim against Haner, Defendants' removal based on fraudulent joinder was improper.  Plaintiff's motion to remand is **GRANTED**, and the matter is remanded to the Superior Court of New Jersey, Law Division, Somerset County. Plaintiff's request for attorney's fees, however, is **DENIED**.  The Supreme Court counsels district courts to only award attorney's fees in "unusual circumstances" where the "removing party lacked an objectively reasonable basis for seeking removal."  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  Here, I find that Defendants had an objectively reasonable basis for seeking removal, and engaged in typical zealous advocacy on behalf of their clients without crossing into the "[u]nwarranted gamesmanship" or "intellectual dishonesty" that would compel an award of

---

[3] In addition to Plaintiff's forum defendant rule argument, Plaintiff also argues that removal was improper because not all served Defendants effectively consented to the removal.  Because I find that the forum defendant rule applies here, I need not reach that issue.

attorney's fees. *Campbell v. United Parcel Serv., Inc.*, No. 19-12211, 2019 WL 5587349, at *4 (D.N.J. Oct. 30, 2019).


Date:   February 10, 2022                                   /s/ Freda L. Wolfson
                                                            Freda L. Wolfson
                                                            U.S. Chief District Judge